JUDGE GARDEPHE

**18 CV 2216**

Robert L. Sills
rsills@orrick.com
David Litterine-Kaufman
dlitterinekaufman@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
*Attorneys for Petitioner*
   *Space Systems/Loral, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SPACE SYSTEMS/LORAL, LLC,

       Petitioner,

-against-

BULSATCOM EAD,

       Respondent.

---

18-cv-

**COMPLAINT AND PETITION**

Petitioner Space Systems/Loral, LLC ("SSL"), for its complaint and petition against Respondent Bulsatcom EAD ("Bulsatcom"), states as follows:

### INTRODUCTION

1. This action arises out of two agreements between SSL and Bulsatcom: (i) a Reimbursement Agreement, dated May 27, 2015 (the "Reimbursement Agreement"); and (ii) an Agreement Regarding Segregated Restricted Account, also dated May 27, 2015 (the "Restricted Account Agreement"). The Reimbursement Agreement and the Restricted Account Agreement are attached hereto as Exhibit A and Exhibit B, respectively, and made a part hereof as if fully set forth herein.

2. Each agreement includes a binding arbitration clause, requiring that all disputes arising under, relating to, or in connection with the agreement be resolved through arbitration in New York, New York. Each agreement also includes a provision providing that the agreement is governed by New York law.

3. On March 12, 2018, SSL filed a Notice of Arbitration with the International Centre for Dispute Resolution (the "ICDR") of the American Arbitration Association, requesting compensatory relief and specific performance with respect to the Reimbursement Agreement and the Restricted Account Agreement.

4. SSL now seeks an order compelling arbitration and granting preliminary and permanent injunctive relief to maintain the *status quo* pending the arbitration in accordance with the parties' contracts.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under Chapter Two of the Federal Arbitration Act, 9 U.S.C. §§ 201, *et seq.*, and in particular § 203 thereof.

6. Venue in this District is proper pursuant to 9 U.S.C. § 204 because the agreements provide that any arbitration shall take place in New York, New York.

## THE PARTIES

7. Petitioner SSL is, and at all times relevant herein, has been, a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business located at 3825 Fabian Way, Palo Alto, California 94303.

8. Upon information and belief, Respondent Bulsatcom is, and at all times relevant herein, has been, a corporation organized and existing under the laws of Bulgaria with its principal place of business in Sofia, Bulgaria.

## THE FACTUAL BACKGROUND OF THIS ACTION

**A.   The Reimbursement Agreement and the Restricted Account Agreement**

9.   In September 2014, SSL and Bulgaria Sat EAD ("Bulgaria Sat"), an affiliate of Bulsatcom, entered into an agreement for SSL to provide Bulgaria Sat with its first dedicated communications satellite, BulgariaSat-1.

10.   SSL assisted Bulgaria Sat in obtaining financing for its purchase of the satellite, which included a debt facility provided to Bulgaria Sat by the Export-Import Bank of the United States ("Ex-Im Bank").

11.   As part of the deal, Ex-Im Bank required Bulgaria Sat to maintain a debt service reserve account for payments on the debt facility. Ex-Im Bank also required a letter of credit to provide collateral support for the debt service reserve account.

12.   SSL, through its parent Maxar Technologies Ltd. (known at the time as MacDonald, Dettwiler and Associates Ltd.), arranged for the Royal Bank of Canada ("RBC") to issue a letter of credit for the benefit of Deutsche Bank Trust Company Americas, as security agent for Ex-Im Bank, which RBC issued on May 26, 2015 (the "Letter of Credit"). SSL provided cash collateral to RBC to support the Letter of Credit, which RBC would use to repay any draws on the Letter of Credit by Ex-Im Bank.

13.   The Letter of Credit was issued in the amount of $9,600,000. The Letter of Credit had an initial date of expiry of May 25, 2016, and thereafter renewed automatically for one-year periods absent prior written notice by RBC. The Letter of Credit remains in effect as of the date of this filing.

14.   Ex-Im Bank has the right to draw upon the Letter of Credit in the event of a default by Bulgaria Sat on the Ex-Im Bank debt facility.

15.     At the same time that SSL obtained the Letter of Credit, SSL and Bulsatcom entered into the Reimbursement Agreement and the Restricted Account Agreement to set forth Bulsatcom's obligations to SSL with respect to the Letter of Credit.

16.     Section 2 of the Reimbursement Agreement, which obligates Bulsatcom to reimburse SSL for any draws by Ex-Im Bank on the Letter of Credit, provides:

> [Bulsatcom] agrees to reimburse [SSL] upon written demand for any and all amounts paid by [SSL] to [RBC] (either directly or indirectly) in connection with the Letter of Credit, whether for principal, interest, fees, expenses (including, without limitation, all expenses incurred by [SSL] whether charged by [RBC], its outside professionals, or otherwise), indemnification amounts or otherwise . . . .

17.     Section 1 of the Reimbursement Agreement, which obligates Bulsatcom to establish a segregated restricted account at Deutsche Bank AG, London Branch ("DB London"), with funds to be used solely to satisfy Bulsatcom's obligations under the Reimbursement Agreement and another agreement not at issue (the "Restricted Account"), provides:

> [Bulsatcom] has agreed to establish a segregated restricted account at [Deutsche Bank AG] into which [Bulsatcom] and/or its shareholders will deposit cash from time to time in an aggregate principal amount of at least US $9,600,000 to be used by [Bulsatcom] to satisfy its obligations hereunder and/or to repay obligations owed by [Bulsatcom] to [Deutsche Bank AG] and the lenders under the Facilities Agreement and not for any other purpose.

18.     Section 1 of the Restricted Account Agreement, which concerns the creation and maintenance of the Restricted Account, provides:

> [Bulsatcom] hereby confirms that it has established with [DB London] a segregated restricted account . . . into which [Bulsatcom] . . . and/or its shareholders . . . have deposited cash in an aggregate amount of at least US $9,600,000 to be used by [Bulsatcom] to satisfy its obligations under the Reimbursement Agreement . . . and/or the repayment of obligations owed by [Bulsatcom] to [DB London] and the Lenders under the Credit Agreement, and not for any other purpose.

4

19. Section 1 of the Restricted Account Agreement also provides that Bulsatcom "hereby covenants and agrees that it will not permit the cash balance in the Segregated Restricted Account to drop below US $9,600,000 at any time," with certain exceptions not at issue.

20. Section 2 of the Restricted Account Agreement, which concerns the release of funds maintained in the Restricted Account, provides that Bulsatcom "acknowledges and agrees that it must obtain [SSL's] prior written consent before withdrawing any funds from the Segregated Restricted Account."

21. Neither the Reimbursement Agreement nor the Restricted Account Agreement gives SSL the power to countermand instructions by Bulsatcom to DB London to transfer funds out of the Restricted Account.

22. Bulsatcom has not to disclosed to SSL, and SSL is not aware of, any assets owned by Bulsatcom other than the Restricted Account.

**B. Bulsatcom's Failure To Reimburse SSL for Ex-Im Bank's Draws on the Letter of Credit**

23. On January 8, 2018, Deutsche Bank Trust Company Americas (as Senior Security Agent) sent SSL a Notice of Enforcement Action, which notified SSL that Ex-Im Bank had directed draws to be made on the Letter of Credit.

24. To date, Ex-Im Bank has drawn $6.7 million (the "Drawn Amount") on the Letter of Credit.

25. RBC has obtained repayment of the Drawn Amount from the cash collateral provided by SSL.

26. On January 19, 2018, SSL sent Bulsatcom a written notice of demand (the "Reimbursement Demand Letter") for reimbursement of the Drawn Amount pursuant to the Reimbursement Agreement. The Reimbursement Demand Letter notified Bulsatcom of the

amount Ex-Im Bank had drawn on the Letter of Credit and that RBC had obtained repayment from SSL and/or its affiliates for the Drawn Amount. In the letter, SSL demanded that Bulsatcom reimburse SSL for the Drawn Amount.

27. The Reimbursement Demand Letter also requested confirmation from Bulsatcom that Bulsatcom would not make any future withdrawals from the Restricted Account

28. As of the date of this Complaint and Petition, Bulsatcom has not responded to the Reimbursement Demand Letter nor has it provided the requested confirmation that it would not withdraw funds from the Restricted Account.

### C. Bulsatcom's Other Attempts To Avoid Responsibility for Ex-Im Bank's Draws on the Letter of Credit

#### 1. Bulsatcom's Failure To Repay in Full a Withdrawal From the Restricted Account

29. In December 2015, SSL and Bulsatcom agreed to the temporary release of $3,600,000 from the Restricted Account and the temporary waiver of the requirement that Bulsatcom maintain a balance of $9,600,000 in the Restricted Account.

30. SSL agreed to the request on the condition that Bulsatcom repay the full amount withdrawn on a specified schedule resulting in full repayment no later than September 30, 2016, and that Bulsatcom provide a certification of compliance with the repayment schedule each month until the withdrawal was repaid in full.

31. Bulsatcom subsequently provided certificates of compliance for repayments required to be made in the months of January, February, and March 2016, certifying that $900,000 in aggregate had been repaid to the Restricted Account.

32. Bulsatcom failed to provide any further certificates of compliance. On information and belief, Bulsatcom has not repaid the remainder of the withdrawn amount to the Restricted Account.

### 2. Bulsatcom's Failure To Obtain a Substitute for the Letter of Credit

33. The Reimbursement Agreement and the Restricted Account Agreement each require Bulsatcom to obtain a partial substitute for the Letter of Credit within one week of the launch of BulgariaSat-1.

34. Section 2(b) of the Reimbursement Agreement provides:

[Bulsatcom] agrees to arrange for the issuance of a substitute letter of credit for the benefit of the Senior Security Agent, in form and substance satisfactory to the Senior Secured Parties in their sole discretion in an amount equal to or greater than US $5,000,000 on or prior to one week after the launch of the Satellite . . . but prior to in-orbit delivery (the "First Substitute Letter of Credit"). The parties hereto acknowledge and agree that upon issuance of the First Substitute Letter of Credit, the face amount of the Letter of Credit shall automatically be reduced by a corresponding amount and that in the event Senior Security Agent is permitted to draw upon either letter of credit, the parties hereto shall use their best efforts to arrange for the Senior Security Agent to draw upon and exhaust the First Substitute Letter of Credit first before drawing upon the Letter of Credit.

35. Section 2 of the Restricted Account Agreement provides:

[Bulsatcom] hereby covenants and agrees that no later than one week after the launch of the Satellite . . . but prior to in-orbit delivery it will either have arranged for [DB London] to have issued and delivered the First Substitute Letter of Credit to Ex-Im Bank, or procured the release of sufficient funds from the Segregated Restricted Account to enable [Bulsatcom] to arrange for the issuance by another financial institution acceptable to Ex-Im Bank in Ex-Im Bank's sole discretion of the First Substitute Letter of Credit, whereupon a corresponding amount of the Letter of Credit shall be released by Ex-Im Bank.

36. Section 3 of the Restricted Account Agreement provides:

[Bulsatcom] hereby acknowledges and agrees that in the event Ex-Im Bank is permitted to draw upon either the Letter of Credit and the First Substitute Letter of Credit, it shall use its best efforts to arrange for Ex-Im Bank to draw upon and exhaust the First Substitute Letter of Credit prior to drawing upon the Letter of Credit.

37. BulgariaSat-1 was launched on June 23, 2017. However, Bulsatcom did not obtain the First Substitute Letter of Credit by June 30, 2017 (i.e., one week after the launch), as required by the Reimbursement Agreement and the Restricted Account Agreement.

38. On October 4, 2017, SSL sent Bulsatcom a written demand that Bulsatcom arrange for the issuance of the First Substitute Letter of Credit. Bulsatcom never responded to SSL's written demand.

39. Had Bulsatcom timely obtained the First Substitute Letter of Credit, at least $5,000,000 of the Drawn Amount would have come from the First Substitute Letter of Credit rather than the initial Letter of Credit.

### D. SSL Initiates Arbitration Against Bulsatcom

40. Section 10(j) of the Reimbursement Agreement, which concerns dispute resolution, provides:

> Any and all disputes, controversies and claims between [Bulsatcom] and [SSL] and arising under, relating to or in connection with, this Agreement, in any manner whatsoever, whether in contract, in tort, or otherwise, and including any dispute or controversy regarding the existence, validity, or enforceability of this Agreement, or the arbitrability of any dispute, controversy, or claim, and whether brought by either party and/or any of its parents, subsidiaries, affiliates, officers, directors, or agents, on the one hand, against the other party and/or any of its parents, subsidiaries, affiliates, officers, directors, or agents, on the other hand, will be finally and conclusively settled by arbitration by a tribunal of three (3) arbitrators constituted and acting under the International Arbitration Rules then in effect of the International Centre for Dispute Resolution . . . of the American Arbitration Association . . . .

41. The Restricted Account Agreement contains substantially the same arbitration clause.

42. The Reimbursement Agreement and the Restricted Account Agreement each specifies New York, New York as the place of arbitration.

43. Section 10(c) of the Reimbursement Agreement provides:

> Pursuant to Section 5-1401 of the New York General Obligations Law, the substantive laws of the State of New York applicable to agreements made and to be performed entirely within such state, without regard to the choice of law principles that might otherwise apply, and the applicable federal laws of the United States of America, shall govern the validity, construction, enforcement and

interpretation of this Agreement and all of the other Documents entered into between [SSL] and [Bulsatcom].

44. Section 9 of the Restricted Account Agreement is substantively identical to Section 10(c) of the Reimbursement Agreement set forth in the preceding paragraph.

45. Section 10(l) of the Reimbursement Agreement provides:

Each party hereby irrevocably submits to (i) the non-exclusive jurisdiction of the United States District Court for the Southern District of New York in New York, New York (the "U.S. District Court") in connection with any proceeding for the confirmation or enforcement of an arbitration award and (ii) the exclusive jurisdiction of the U.S. District Court in connection with (A) any application for interim, provisional, or conservatory measures in connection with an arbitration or an action to compel arbitration . . . .

46. Section 12 of the Restricted Account Agreement is substantively identical to Section 10(l) of the Reimbursement Agreement set forth in the preceding paragraph.

47. On March 12, 2018, SSL filed a Notice of Arbitration with the ICDR requesting compensatory relief and specific performance with respect to the Reimbursement Agreement and the Restricted Account Agreement.

## CLAIMS FOR RELIEF

### COUNT I
### ORDER COMPELLING ARBITRATION

48. The Reimbursement Agreement and the Restricted Account Agreement are valid and binding agreements between Bulsatcom and SSL.

49. The Reimbursement Agreement and the Restricted Account Agreement each contains a valid and enforceable provision requiring the parties to arbitrate any and all disputes, controversies and claims between them and arising under, relating to or in connection with the agreement.

50. Pursuant to 9 U.S.C. § 206, SSL is entitled to an order compelling arbitration of the dispute with Bulsatcom described herein.

## COUNT II
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

51. If Bulsatcom transfers funds out of the Restricted Account, in violation of the Reimbursement Agreement and the Restricted Account Agreement, SSL will be immediately and irreparably harmed through the loss of its contractual right to a meaningful arbitration, including the right to recover on an award issued by the arbitral tribunal, under the Reimbursement Agreement and the Restricted Account Agreement. SSL has no adequate remedy at law.

52. Bulsatcom has manifested an unambiguous intent to avoid repaying amounts drawn by Ex-Im Bank on the Letter of Credit. By reason thereof, SSL is entitled to a preliminary and permanent injunction prohibiting Bulsatcom from transferring funds out of the Restricted Account in violation of the Reimbursement Agreement and the Restricted Account Agreement.

## PRAYER FOR RELIEF

WHEREFORE SSL demands judgment against Respondent Bulsatcom EAD, as follows:

(a) preliminarily and permanently enjoining and restraining Bulsatcom, together with its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with Bulsatcom or any of its agents, servants, employees, or attorneys, from transferring or attempting to transfer any funds out of the Restricted Account absent prior written consent from SSL;

(b) compelling Bulsatcom to arbitrate the current dispute between the parties in the ICDR arbitration now pending in New York entitled Space Systems/Loral, LLC v. Bulsatcom EAD, ICDR Case No. 01-18-0001-0869;

(c) granting SSL its costs and disbursements of this action, including its reasonable attorneys' fees; and

(d) awarding such other relief as the Court deems just and proper.

Dated: New York, New York
       March 12, 2018

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *[signature]*
Robert L. Sills
rsills@orrick.com
David Litterine-Kaufman
dlitterinekaufman@orrick.com

51 West 52nd Street
New York, NY  10019-6142
+1 212 506 5000
+1 212 506 5151

*Attorneys for Petitioner*
   *Space Systems/Loral, LLC*